Even if it was a quote from the most perfect of all courts. Inventor Holdings v. Bed Bath & Beyond. Good morning, honors. May it please the court. The district court's opinion regarding U.S. patent number 6381582 should be reversed for the following four reasons. First, the district court's opinion recognized that not all claims were asserted, and nevertheless, invalidated claims where there was no case or controversy and thus no jurisdiction. Did you ask us to correct that error in your blue brief? Yes, we did. We said that not all the claims were asserted. Or did you ask us to vacate and remand that part of the holding? We asked for that to be vacated and remanded, I believe. No, you asked for the whole thing. Where specifically did you say the district court's invalidation of the entire patent was overbroad and for the claims that weren't asserted should be vacated? Because I see your argument, but I don't see where you asked us in your blue brief to make that point. Maybe I missed it. I know that we pointed out a footnote. Well, if you're going to a footnote, you're in trouble already, because we've often held you don't preserve things by putting in a footnote. Here it is. It's on page 14 of the blue brief. It says, and this is not the footnote, second sentence. However, the district court failed to examine or analyze all of the claims, including but not limited to Claim 69-73, which contained means plus function elements when ruling that all the claims of the 582 patent were invalid. See, I don't understand that, because this is not separately saying even if the district court is right as regards to the asserted claims, it still should be vacated with all of these others. It seems to me that you are trying to argue that these weren't invalid because of these other claims, but they weren't at issue. I mean, is this what you have to specifically set out, that the district court's judgment was overly broad? We have... Because the heading here is the district court erred in invalidating the 582's patents claims. And, Your Honor, we put that heading because the district court was wrong to invalidate all of the claims, because not all of the claims were at issue. Even Bed Bath & Beyond acknowledged this in its brief on page 8, and in the appendix at page A-1014, it shows that seven claims were asserted. And then prior to the court's... I just have a hard... I mean, I see what you're saying. Maybe that's enough, but it's a pretty ambiguous way to preserve that, because you certainly don't, in your prayer for relief or conclusion or anything, recognize that the district court's judgment should be vacated at least in part with two of the unasserted claims. You have that one sentence that talks about it being overbroad, but you never specifically ask us, even if we affirm the judgment, to vacate and remand as to the unasserted claim. Your Honor, in response to that, we believe that the district court's opinion should be reversed because it invalidated all of the claims, including the unasserted. Well, I understand, but that's the problem. If we disagree with you on your reasons for reversing all of the claims because we think the district court was entirely right on 101, it does not seem to me that you specifically laid out an alternative argument as to the unasserted claims. Let me follow that by pointing to your statement of the issues. In an earlier case, we had ten issues, all of which are silly, but in your case, you only have three, and the issue that Judge Hughes is pointing to is not one of your issues. So technically, you have not raised before us the issue of whether the court erred in including claims that were not being asserted. Your Honor, the effort did not list more than three issues. We believe that invalidating claims that were not an issue is encompassing issue one. Whether the district court erred in finding the 582 patent invalid under 101, Bed Bath & Beyond's own brief acknowledged that there were unasserted claims, so Bed Bath & Beyond knows as well that there were claims not an issue and the order went too far. You want us to read issue number one to include two subsets, A, 101, and B, unasserted claims. We think that because the district court invalidated all of the claims, including those not an issue, that the unasserted claims are encompassed in issue one. That's correct, Your Honor. Okay. Now, the district court should also be overturned because Bed Bath & Beyond did not satisfy its burden of production. Questions of fact exist, and the district court has since recognized on March 17, 2016, when denying a motion to dismiss in Bristol-Myers Squibb v. Merkin Company, that patents are presumed valid, the clear and convincing burden of proof applies to 101 challenges, and questions of fact can exist when parties disagree as to whether step two of ALICE is satisfied.  Would you give us a definition of an abstract idea and tell us why your claims or your invention, whichever it is, do not fall within the concept? What is your definition of the concept? Looking at ALICE step one for what the claims are directed to, the claims of the 582 patent are directed to methods, apparatuses, and articles of manufacture for processing payments that make local and remote sellers and the tracking of the respective orders interoperable. All right, and why does that not fit within your definition? You haven't given me your definition of an abstract idea. My question to you, what is an abstract idea and why are you not one of them? An abstract idea, looking at the case law by the Supreme Court, has been items such as algorithms or fundamental economic practices, neither of which are what the 582 patent is directed to. Doesn't it involve a commercial transaction while providing protection for the consumer's financial information? It does do that, Your Honor, but the manner in which it does it, it is then concrete and tangible, which takes it out of any abstractness. Which does what? It's concrete and tangible, so then it takes it out of being abstract. What about it's concrete and tangible? So at the time of the invention. That you go to a store? That's overlooking what the invention did and what the state of the art was at the time. In 1997, persons of ordinary skill in the art did not know how to combine technologies such as database management, electronic communications, operations and logistics, and payment reconciliation. And what that means here is that if you went into a store and went to a point of sale terminal, that terminal was programmed in a specific language. That point of sale terminal could not communicate with a remote seller's backend server or system where the order was placed and where inventory is made. So your invention is an improvement in software for financial transactions. That is, you're going to add certain... Well, let me ask you this hypothetical. I go into Joseph A. Banks and I want to buy a suit. One suit, they're going to give me four free. That's okay. They don't have my size. So the clerk says to me, let's look in the catalog and see if we carry your size. They look in their catalog and they find, yes, they do carry my size in other stores. So the clerk calls the store in Omaha and Omaha has, yes, we have four in his size. And the clerk says, fine. We want to get those. We'll reimburse you because it's in your inventory. And you'll ship it directly to the customer. They agree. I pay the clerk here in Washington. Is that an example of your invention? No, it is not, Your Honor. Why not? In that situation, you only have one seller, Joseph A. Banks. You have no remote order because at that point in time, the person is at the store placing the order at the store. There's no code that's being used by the point-of-sale terminal. Judge Plager forgot to mention he was on the phone with the salesman. It's still there's only one seller. So there's not one. There's not a local or remote seller. There's only one. So it's the local seller. There's no code. There's no point-of-sale system determining if the code relates to a local or remote order. Are you saying that the remote seller and the local seller are different entities in your claims? What we're saying is that they are different entities or there is the potential that they can be basically affiliated entities under the same umbrella. That's what my two stores are. They're affiliated entities because they're individually owned. They're franchises. Now, I don't know whether Joseph A. Bank actually has franchises, but let's assume they do. They're franchise stores. And so the local store, who I've called on the phone to get the thing, says, don't worry about it. We know where we can get them for you. And they get them for me by paying the other store because it's in their inventory. They take their commission and they have it delivered to me. And I've paid for it by going to the local store and giving them my credit card, which they didn't accept, but that's a separate issue. Right. So first, if they're separate franchises, you could still say that there's still no code at all. Zero. There's also no point-of-sale terminal determining the price for the order or any determination. Wait. So here's where I think you're getting into trouble, at least for me. When you talk about point-of-sale terminal, what do you mean? A point-of-sale terminal is… It's some type of program computer. That's correct. That itself has been independently patentable. Sorry. It's been independently patented. There are patents on point-of-sale terminals. It is a concrete machine. Yeah, but that's not what your claims or your invention requires because your invention says that the seller, the remote seller, will have a contract with the local store. And that's the preliminary step. The remote seller comes in and makes a contract with the local store that the local store will work with the remote seller. Isn't that what your… No, Your Honor. There's nothing in the claims that require there be a contract at all. Why does it matter that the point-of-sale computer is independently patentable? At some point, all computers were patentable, but Alice and all these other cases have recognized that doing an abstract idea on a computer is not enough to make it one-on-one eligible. You're not claiming a specialized point-of-sale computer. The manner in which it is programmed does make it a special point-of-sale terminal because prior to the… So you're saying, I mean, you're saying that your method involves a programmed computer and that takes it out of one-on-one. We are saying that a point-of-sale system is concrete and tangible, so therefore it's out of one-on-one. And it's concrete and tangible because it's programmed in a special way. Yes, and it's an actual physical device that you can actually pick up and… Isn't that entirely inconsistent with just hordes of precedent from the Supreme Court in this court on that point? Well, because there are machines in – it's a machine, and machines are still eligible subject matter. Can – I mean, are you really arguing to me today that a programmed general-purpose computer renders this patent eligible? Because, you know, we – you could go do a Westlaw search in five minutes and find at least 20 cases where we've held the opposite. Your Honor, a point-of-sale terminal is not a general-purpose computer. I see that in my rebuttal time, but it's a specific machine that is used solely for consumer transactions. In fact, IBM created it. The whole notion of having like a SKU, which is the code that's entered into the machine and pulling up a price, that is solely for point-of-sale terminals. It's not just like an IBM computer that you could buy at Best Buy or a Dell or a Gateway. May we continue our dialogue? I'll give it to you. Open up your patent to column nine, please, sir. Line – beginning at line 18. In practicing the present invention, preliminary relationships are preferably established between the catalog merchant, who operates remote seller system, the processing merchant, who operates remote processor system, and the retail merchant, who operates local POS system. More specifically, contractual relationships – that's a contract – contractual relationships are established between the parties, where under the retail merchant agrees to accept and forward customer payments to the catalog merchant in exchange for an agreed-upon payment or other remuneration. Other contractual relationships are preferably established, etc., etc. There's nothing in there that calls for some sort of special machine or anything else. Apparently, there's going to be an agreement between the remote merchant and the local merchant that this is the way the thing's going to work. Am I in the wrong place, or is there something I'm missing? Your Honor, that's a best-mode description in order to get the remote seller and the local seller to actually want to do this together. But the place you should be looking at is column five, line 29, the system overview. That section has – Yeah. A retail system is shown including a remote seller system connected to a local point-of-sale system through a remote processor system. Nothing is said about the remote processor system requiring some sort of anything other than their standard computer systems, but that's besides the point. Your Honor, the technology here, the reason why looking at the Alice test, there's an inventive concept here, is because there's non-routine programming required by the claims in order to make the advancement so that the point-of-sale terminal could communicate with the remote seller system. That didn't happen before. And for Bed Bath & Beyond to say, well, look at common sense, and that's what the judge is allowed to use, the court has held that if common sense is going to be applied by a district court, the district court has to dot the I's and connect the T's, so on appeal you can see the rationale. Wrap it up, Mr. Warren. You're going to wrap it up? Yes. The district court did not do that here. The district court's opinion is conclusory without looking at any facts. It's all based on conjecture. I'm going to give you a minute on rebuttal. Thank you. Mr. Conrad, I'm going to treat you the same way I treated Mr. Weinblatt. I'm going to start out by asking, you're claiming that his invention is an abstract idea. Isn't that right? That's correct, Your Honor. That's your case. Define for me what you understand to be an abstract idea, please. Yes, Your Honor, and that's the question, isn't it? An abstract idea is an idea that's divorced from the means or structure for carrying out that idea. An idea that is divorced from the means or structure for carrying out that idea. That's right. So a good example, and we're going to go way back for this one. Let's not go to a good example. Let's simply apply it to the invention before us. Their idea is to have a local merchant accept payment for goods ordered from a remote seller. Isn't that right? That's correct. That's basically what it's all about. And the way they want to do it is through this computer system with some sort of code. That's the means, and the structure is the routine business interaction by computer. That idea is not divorced from the means and the structure. It's incorporated right into the means and the structure. So I think you've just defined yourself out of the case. Well, I disagree, Your Honor. It's a question of degree, and it's one that really depends upon the context of every case. It's the degree of means or structure. That's right. It's a look at the invention as a whole that the patentee has described. And has the patentee developed a means for accomplishing their idea that is of the sort that the patent laws are intended to protect? Because if you have a means that's so broad that it is the kind you see here where it is simply receiving information or transmitting information, without a new way of doing that that is an advancement of the arts, then the patentee simply hasn't invented— He hasn't described it adequately. Well, perhaps, Your Honor, maybe he did describe it in the specification. But what he may have done, which is what we have here in this case, is he's claimed the broad idea. So perhaps the patentee may have said— He wasn't broad about his ideas. His idea is quite specific. Well, I disagree that it's quite specific, Your Honor. I'll give you one example. Okay. In this case, let's talk about the code, for example. What is the code? Is it anything specific in this case? It's not. There's actually statements in the patent that describe how the code really could be anything for identifying the catalog merchant or identifying the product. So there's one— I assume he would use an R for remote and an L for local. That's a code. That's simple enough. It is a code. He doesn't have to spell that out, does he? Would someone of ordinary skill like me know how to do that? Well, you may know how to do that, but what are you going to foreclose? If that's what you're allowing the patentee to patent. If you're saying, let's use a code. Codes have been used for the longest time as far as— Well, your argument is his claim— By the way, do we look at the claim to determine what it is that's the abstract idea, or do we look at the invention as described in the written description and in all of the various 74 claims in this particular patent? Yes. You start with the claims because that's the definition of what is the scope of the invention being claimed. But you have to look at it in the context of the entire patent. And we know that because we have to understand what these words are. What is it he's trying to say? So doing it that way, your argument—and it perfectly sounds like a good argument—is that they don't spell it out in enough detail. In the claims? In the claims. They don't explain what the code is. Well, they don't explain how to use the code to accomplish the idea of what they want to use it for. So in this case— Wait a minute. I don't understand that sentence. Let's assume the code is either an R for remote or an I for local. And the local guy puts in an R indicating this payment is for the remote order I sent you earlier. They all understand that. What's wrong with—what do you mean that doesn't work? Well, all you've done is something that we've done for the history of mankind, which is— Oh, well, now that's an obvious—isn't that an obviousness problem? Your Honor, it's not—there is some overlap with— Are you overlapping obviousness into indefinite or abstract idea? I don't think you have a way to get around the fact that there is some overlap. And this has been said by the Supreme Court as well, that 101 is more of a wholesome concern about what do you believe the patent laws are intended to protect in order to preclude what could be wonderful inventions coming out within the scope of what you've claimed without precluding all those possible inventions. Now, the patent laws are intended to protect excluding certain kinds of inventions and the benefit from that may be that there are ways to get around it that could be beneficial to society by having people try to invent new ways of doing the same thing. When you claim all ways of doing the same thing, then that's where 101 has stepped in and said, no, no, no, this—what you've got here is really just an idea. There's a lot of different ways of doing this idea, but what you've claimed is the idea. No, he claims that you go into the local merchant with your credit card. I mean, I don't know how much more specific you can get. What is he—what idea—what alternatives is he blocking by saying, go into the local merchant who's already made a contract with the remote retailer, remote provider. First, they have to have a contract. Well, that's pretty specific. How is that not a standard business method as well? I'm sorry, your honor. I said, how is that not a standard business method? How is what not a standard business method? What Judge Plager just described to you. It sounds like things that are done in business. That's correct. Here, the patentee has blocked off— You can't patent a standard business method, can you, because it's an abstract idea. This isn't one of those cases where we can just generally describe it as a business method. Why not? I mean, it's a method for paying for a remote order on site. I mean, it sounds like a payment method. It sounds to me indistinguishable from some of our other cases in the Supreme Court cases where you've had things like hedging or sureties, and sometimes you put them on a computer, and that's not enough to make them patent eligible. You're right, your honor. I take that back. It is a business method in the sense that there are different kinds. For example, there may be financial products, for example. There may be software that's simply telling the computer to do something without anything about the computer being special other than it'll do it for you. And then there are contractual arrangements, legal intangibles, about how do you organize humans to communicate together and to work together. So when you speak of business methods, there's a lot of different kinds. This one is more about an overlap between legal intangibles and organizing human activity. There are a remote seller and a local seller, and the local seller accepts payment on behalf of the remote seller. That's it. And all they've done here in this patent is dress it up with computer technology. The goal, I don't want to speak to the motive, but the effect of that is that let's have a big business idea, which is just a small variation on what has been done before. So maybe no one's done it before, but that's only because they didn't do it, not because it's necessarily an advancement of anything. Let's claim computers doing all this. And what you've done in modern society is preempt all ways of doing this. And I want to point out, I don't believe I've seen anything in the briefing or the record, and even the expert testimony which touches on preemption that the appellant put in the record. Nowhere is there a, I don't believe a statement, or at least no persuasive showing that remote sellers having a local seller accept payment on their behalf, maybe when computers are used, that that's been precluded. In every sense of the word, that scenario, that agency relationship. It goes on all the time. It goes on all the time in other contexts, in the context of a financial transaction. It may well be that his so-called invention is obvious. The claims are indefinite under 112. It's obvious under 103. It probably is anticipated under 102. There's enough of that going on. You wouldn't have a big problem. But I don't know why that makes it abstract. It just makes it invalid. But it doesn't make it abstract. I'm trying to understand why, of all the weaponry that's available to a defendant who's being sued by a crappy invention, why do you go to 101 when you've got 102, 103, and 112 functional? 101, as the Supreme Court has laid it out in the standards that it's set for us, is more of a wholesome look at this. And there's, in some sense, a policy perspective where you have to look at the full patent, the full context of what the patent says is the environment and determine, is this really something that's going to be protected? Because it may be new. It may never have been done before. And maybe it's obvious, but the statute and the case law has set forth rigorous tests to put forth whether or not it's obvious. We're not saying necessarily it's obvious. There are some overlaps, for sure, but we're not saying that. That hasn't been litigated. I'm sorry, Your Honor? That issue has not been litigated. It was not reached a finality in the court. There was expert reports, for sure. Are those issues still pending? No, Your Honor. The 101 issue resolved the case. Resolved the litigation. Yes. Okay. So there are definitely other avenues that if the patent truly is a bad patent, that ultimately the accused infringer could prevail. That's a lot of hoops. That's a lot of hoops in an expensive forum. And 101 is a quick killer. Assuming, Your Honor, that there is in the patent some good statements about the fact that they've done everything conventionally, they've used only conventional methods, and you can look at it and you say they really are just going for the big idea and they're not really trying to be specific about what it is, about how they're going to do that idea. And that's demonstrated in the claim. So under the Supreme Court's case law, 101 has shown to be an effective and efficient way to resolve bad patents. Whereas, sure, maybe they could have been weeded out through other statutory methods, but in the current framework, that's an expensive proposition. And, Your Honor, I want to address the issue that an appellant raised about the asserted claims. It was a surprise to hear that today about the appellant wanting to vacate some claims because that was nowhere in the briefing. And I think the reason is that the way it was put forth in the briefing was not to parse out the claims, but rather to look at some of the claims, which were before the district court. Your opposing counsel argued that you conceded his point. No, Your Honor. We pointed out that because they've raised these claims in the appeal as being distinguishable, but they didn't below, maybe there could be a situation where they believe that those are not asserted. We did not see that in the record below, so we at least told the court about this. But looking below, it's clear that all the claims at least were issued as the way it was litigated below. At no point did the appellant ever say that these claims were not at issue in the 101 appeal. The parties briefed on all the claims. We set forth in the lower court briefing, we set forth representative claims, at least one of which wasn't asserted against any party. We moved for invalidity of all the claims. And the appellant responded in the briefing in the lower court opposing all of the claims. And all the claims were at issue because the patentee's complaint said at least claim 25 is infringed, so that puts all the claims at issue. And our counterclaim for invalidity wasn't a counterclaim for all the claims. At no point during the case below, prior to the decision, did appellant ever tell the court, no, these claims are not at issue. We're going to ask the court not to rule on those claims. Well, indeed, if the invention, however defined, is an abstract idea, then all of the claims that hang onto it would be invalid, wouldn't they? Your Honor, it could be. By definition. Not necessarily, Your Honor, because it could be that in some claims, the patentee gets very specific about the way that they want it to be done. And that specificity has reached the threshold beyond which it is now an eligible invention. That doesn't change it from being abstract. That's step two of ALICE. That's where you take an abstract invention and you somehow make it concrete. That's different from whether it's abstract in step one. There's a lot of confusion around that. Let's stay with the first question because you never got to step two. Yes, Your Honor, I see where you're going. So maybe in that claim that even though it's very specific, one can see a nugget of what an abstract idea is, what the patentee was going for, and you can say that's the abstract idea. The Mayo's test is, as you point out, a two-step framework. So you may or may have gotten it right, may have gotten it wrong as to what the idea is that's abstract. But there's a second test, a second step. But it was never gotten to in this case. I disagree, Your Honor. The court did make a finding that there is nothing in the claims that made them special to take it out. It wasn't as explicit as saying step two has not been met. But the court did say, for example, all claims of 582 lack meaningful limitations on the abstract idea. That's a perfect recitation of what step two is, Your Honor. That's right. He also said on A7, none of the 582 patents claims are restricted to any specific inventive ways of storing codes and databases or electronically applying them. So that's with more specificity, but that's also rationale under step two of Alice and Mayo. So that's past my time, Your Honors. Unless you have further questions, I ask the court respectfully to affirm the decision. Thank you. You've got a minute, Mr. Weinblatt. Okay, Your Honor. I'll try to address as many points as I can within that minute. The disreport statement that none of the claims are inventive ways, that's a conflation of the analysis of 101, 102, and 103 because he didn't consider any facts. It was all based on uncorroborated assertions by Bed Bath & Beyond. Next, Fox Group, the three cited by Bed Bath & Beyond, 700, F3rd, 1300, says that what matters is whether the parties are on notice of the asserted claims. And here, the parties were on notice of the asserted claims before the district court's opinion came out. For Alice, step two, regarding inventive concept, if there's something more than a claim on the purported abstract idea, step two of Alice is satisfied. The claims here are more than the abstract idea that the court has mentioned today because there is this code that's being generated by the remote seller that's then transferred over to the point of sale system at the local seller and then used in order to process a local payment. I ran out of time. I have one more point, if I can make it, Your Honor. You've got five seconds. Okay. The code that Judge Blager was asking about, the R and L, that's not a code in accordance with one of ordinary skill in the art because that is not a code that's used to identify the remote order and then determine a price of that remote order. I was just trying to be helpful. By the way, my comment about your invention was not a comment about your invention. It was just to get his attention.  Thank you very much, Your Honor.